IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| LORAIN M. NOVAK,<br><br>    Plaintiff,<br><br> vs.<br><br>NANCY BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | CV 16-82-GF-BMM-JTJ<br><br>**ORDER GRANTING SUMMARY<br>JUDGMENT IN FAVOR OF<br>PLAINTIFF AND REMANDING<br>FOR FURTHER PROCEEDINGS** |

## I. SYNOPSIS

Lorain M. Novak (Ms. Novak) brings this action under 42 U.S.C. § 405(g)

seeking judicial review of the decision of the Commissioner of the Social Security

Administration (Commissioner) denying her application for disability benefits

under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401-433.  Ms.

Novak filed her application for disability insurance benefits on May 8, 2012,

alleging disability beginning August 1, 2011, due to a low back fusion, various

spondyolisthesis, arthritis, arm and hand numbness, chronic sinus/ear infections,

1

depression, anxiety, narcolepsy, vocal cord dysfunction, and recurring diarrhea. (Doc. 8 at 247-248, 263) Ms. Novak's claim was denied initially and on reconsideration. (*Id.* at 125 and 140)

An Administrative Law Judge conducted a hearing on August 19, 2014, at which Ms. Novak appeared with counsel. (*Id.* at 18-36) The ALJ issued his decision on January 9, 2015, in which he concluded that Ms. Novak had the residual functional capacity (RFC) to perform past relevant work as a child support officer and social services administrator and that other jobs that exist in significant numbers in the national economy and was therefore not disabled within the meaning of the Act. (*Id.*)

On March 2, 2015, Ms. Novak timely requested that the Commissioner review the ALJ's decision. (*Id.* at 13) The Appeals Council for the Commissioner denied Ms. Novak's request for review on June 3, 2016, making the ALJ's decision the Commissioner's final decision. (*Id.* at 1-4)

Ms. Novak timely filed a complaint on July 4, 2016, seeking judicial review of the Commissioner's decision. (Doc. 1) The Court has jurisdiction over this action under 42 U.S.C. § 405(g). The parties consented to the undersigned conducting all further proceedings in this matter. (Doc. 6) The Great Falls Division of the District of Montana is the proper venue because Ms. Novak resides

in Cascade County, Montana. (Doc. 1 at 1); 42 U.S.C. 405(g); Local Rule 1.2(c)(2).

Ms. Novak filed an opening brief on December 12, 2016, requesting that the Court reverse the Commissioner's decision and remand the case to cure the Commissioner's claimed errors. (Doc. 12) The Commissioner filed a response brief on December 12, 2016, and Ms. Novak filed a reply brief on January 31, 2017. (Docs. 13 and 15) The motion is ripe for decision.

Ms. Novak was born on October 10, 1969. (Doc. 8 at 247) She was 42 years old when she filed her application on May 8, 2012, and 45 years old at the time of the ALJ's January 9, 2015 decision. *See* (*Id.*)

## II.   STANDARD OF REVIEW

The Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). Substantial evidence has also been described as "more than a mere scintilla" but "less than a preponderance." *Desrosiers v. Sec. of Health and Hum.*

3

*Services*, 846 F.2d 573, 576 (9th Cir. 1988).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (citing *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999)). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454 F.3d at 1070 (quoting *Edlund*, 253 F.3d at 1156).Where evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Thomas v. Barhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Green v. Sheckler*, 803 F.2d 528, 530 (9th Cir. 1986). The Court may reject the findings not supported by the record, but it may not substitute its findings for those of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## III.  BURDEN OF PROOF

A claimant is disabled for purposes of the Social Security Act if the claimant demonstrates by a preponderance of the evidence that (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months"; and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work but also cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. §1382(a)(3)(A)-(B)).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled.  *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five.  *Id.* at 954.  The five steps of the inquiry are:

1.  Is the claimant presently working in a substantially gainful activity?  If so, the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

5

2. Is the claimant's impairment severe? If so, proceed to step three. If not, the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past? If so, the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work? If so, the claimant is not disabled. If not, the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Id.*

## IV. BACKGROUND

### A. ALJ's determination

At step one, the ALJ determined that Ms. Novak has not engaged in substantial gainful activity since August 1, 2011, the alleged onset date of her disability. (Doc. 8 at 20) At step two, the ALJ found that Ms. Novak has the following severe impairments: degenerative disc disease; spondylolisthesis; polyarthalgia; carpal tunnel syndrome; diabetes mellitus, type II; and obstructive sleep apnea. (*Id.* at 20)

At step three, the ALJ found that Ms. Novak did not have an impairment, or combination of impairments, that met or was medically equal to one of the listed

impairments. (*Id*. at 25)

Before considering step four, the ALJ assessed Ms. Novak as having the RFC to perform sedentary work as defined in 20 C.F.R. § 1567(a) with the following limitations: she can walk for approximately six minutes at one time; she can be on her feet for up to 10 minutes at any one time; she can be on her feet up to, but not more than, two hours in an eight-hour day; she can sit for one hour at a time, and for at least six hours in an eight hour day; she can lift up to 10 pounds occasionally and less than 10 pounds frequently; she cannot kneel, crawl, or climb ladders or scaffolds; she must avoid concentrated exposure to extreme cold and vibration; and she cannot engage in repetitious uses of her bilateral upper extremities, but they can still be used for gross and fine motor on a frequent basis. (*Id.* at 26-33)

At step four, the ALJ determined that with her RFC Ms. Novak is capable of performing past relevant work as a child support officer and social services administrator. (*Id.* at 33-34)

At step five, the ALJ made an alternative determination that, considering Ms. Novak's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy as a lost-card-charge clerk, information clerk, and customer service clerk that Ms. Novak could perform, and,

therefore, she has not been under a disability since August 1, 2011, the claimed

onset date of her disability, through the date of his January 9, 2015, decision. (*Id.*

at 34-35)

### B. Ms. Novak's Position

Ms. Novak argues the Court should reverse the Commissioner's decision

and remand the case to the Commissioner for a new administrative hearing

because:

1. The ALJ erred at the second step of the sequential analysis in determining that her fibromyalgia was not medically determinable and that her major depression and narcolepsy were non-severe impairments; (Doc. 12 at 2)

2. The ALJ's assessment of her RFC is erroneous because it is not based upon substantial evidence and is contrary to the law. (*Id.*)

### C. The Commissioner's Position

The Commissioner argues that the Court should enter summary judgment in

her favor because:

1. The ALJ properly determined  at the second step of the sequential analysis that Ms. Novak's impairment of fibromyalgia was not medically determinable, that her major depression and narcolepsy were non-severe impairments, and any error in doing so was harmless; (Doc. 13 at 3)

2. The ALJ's assessment of Ms. Novak's RFC is supported by substantial evidence and is not based upon legal error. (Doc. 13 at 11)

# V. ANALYSIS

## A.    Step two issues

Step two of the five-step sequential inquiry imposes a *de minimis* screening device to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." *Id.* An impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities." *Id.* Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.*

In assessing a claimant's RFC, the ALJ is required to consider all of the claimant's medically determinable impairments, including those medically determinable impairments that are not "severe", and any related symptoms that affect what the claimant can do in a work setting. 20 C.F.R § 404.1545; 20 C.F.R. § 416.945. An ALJ's failure to determine that an impairment is severe at step two is harmless error where the ALJ proceeds to the next step and where the ALJ considers the symptoms and limitations from all of the claimant's medically determinable impairments in the RFC assessment. *Gray v. Commissioner of Social*

*Sec. Admin.*, 365 Fed. Appx. 60, 61 (9th Cir. 2010) (citing *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005)).

### 1. The ALJ did not error in determining that Ms. Novak's fibromyalgia was not medically determinable.

Ms. Novak argues that she has fibromyalgia, that the evidence establishes that she has fibromyalgia pursuant to the criteria as set forth in SSR 12-2p, and that the ALJ erred in determining otherwise. (Doc. 12 at 13) The Commissioner argues that substantial evidence supports the ALJ's determination that Ms. Novak's claimed fibromyalgia is not medically determinable because the evidence fails to satisfy the criteria as SSR 12-2p requires. (Doc. 13 at 8)

Pursuant to SSR 12-2p the ALJ may assess fibromyalgia under the 1990 American Colllege of Rheumatology (ACR) criteria or under the 2010 ACR criteria. Here, the the ALJ considered both the 1990 and 2010 ACR criteria in determining whether Ms. Novak's fibromyalgia was medically determinable. (Doc. 8 at 7-8)

In relation to the 1990 ACR criteria, substantial evidence supports the ALJ's determination that the medical record does not disclose at least 11 positive trigger points on physical examination. Therefore, the 1990 ACR criteria are not met. Furthermore, substantial evidence supports the ALJ's determination that Ms.

Novak's symptoms are attributable to other conditions, such as her degenerative disc disease. (Doc. 8 at 25)

In relation to the 2010 ACR criteria, these require substantial evidence supporting the ALJ's determination that co-occurring conditions were excluded as causing her symptoms. Substantial evidence supports the ALJ's determination that no such exclusion took place in relation to her symptoms. (*Id.*)

Ms. Novak also argues that the ALJ's determination that her fibromyalgia was not medically determinable is error because "no provider *disputes* the fibromyalgia diagnosis." (Doc. 12 at 15) However, whether a provider disputes Ms. Novak's diagnosis is not a factor the ALJ was required to consider under either the 1990 or 2010 ACR criteria.

The Court determines that the ALJ applied the correct criteria in determining whether Ms. Novak's claimed impairment of fibromyalgia was medically determinable and that substantial evidence supports the ALJ's determination that neither the 1990 nor the 2010 ACR criteria were satisfied.

In assessing Ms. Novak's RFC, the ALJ is only required to consider symptoms and limitations imposed by medically determinable impairments. Because Ms. Novak's fibromyalgia is not medically determinable, the ALJ did not error by failing to consider the limitations imposed by her claimed fibromyalgia in

the RFC assessment as Ms. Novak argues he did. Furthermore, the ALJ stated that even though he did not find her fibromyalgia to be medically determinable, his RFC assesment would likely not change even if he had because the limitations attributable to her fibromyalgia are considered through their relation to other impairments. (Doc. 8 at 25) As such, the ALJ did "consider" the fibromyalgia related symptoms and limitations in assessing Ms. Novak's RFC despite his determination that it was not a medically determinable impairment. Therefore, the ALJ determination the Ms. Novak's firbromyalgia was not a medically determinable impairment was harmless error.

2. **The ALJ did not error in determining Ms. Novak's major depression was non-severe impairment.**

Ms. Novak argues that the ALJ erred in determining that her major depression and narcolepsy were non-severe impairments. (Doc. 12 at 17) In support of this argument, Ms. Novak points to the medical record verifying her major depression affected her day to day functioning, her testimony about how her major depression impacts her ability to work, the medical record that verifies her being diagnosed with narcolepsy, and her testimony about how her narcolepsy limits her abilities. (*Id.*) The Commissioner argues that the medical record fails to establish any work-related limitations as a result of her major depression and narcolepsy. (Doc. 13 at 9)

Turning first to the narcolepsy, the medical record reflects that Ms. Novak suffered from this medically determinable impairment to the extent that is caused her "to fall asleep at work in the afternoon." (Doc. 8 at 352) The medical record also reflects that Ms. Novak's narcolepsy had become unpredictable and that she required many hours of sleep "both during the day and night." (*Id.* at 823) Ms. Novak also testified at the hearing that when she was working she would fall asleep at her desk and "whack myself on the computer or fall out of her chair on to the floor." (*Id.* at 65) She also testified that at time of the hearing she would fall asleep unpredictably two to three times a week for two to three minutes or up to fifteen minutes at a time. (*Id.*)  The ALJ determined that although Ms. Novak's narcolepsy was a diagnosed impairment, the "records do not establish any more than minimal functional limitations." (*Id.* at 21) The records the ALJ cited in support of this determination provided that although she was suffering from "increased sleepiness," her narcolepsy was under "fair control." (Doc. 8 at 350, 799-800) The Court finds that the medical records provide substantial evidence to support the ALJ's determination that Ms. Novak's narcolepsy was a non-severe impairment and that the ALJ's finding is not based on legal error.

Next, Ms. Novak argues her severe depression is medically determinable and the medical record reflects that her depression is intertwined with the pain she

suffers causing her day-to-day functioning to be "really affected." (Doc. 12 at 16; Doc.8 at 858) Ms. Novak also testified that her physical problems have resulted in anxiety and depression, which in turn adversely affects her ability to work. (Doc. 12 at 16)

The Court finds that the ALJ's determination that Ms. Novak's severe depression was non-severe is supported by substantial evidence because the medical record does not provide any work limitation(s) the severe depression imposes upon Ms. Novak.

## B.     The ALJ's RFC Assessment

Ms. Novak advances several arguments in support of her position that the ALJ's RFC assessment is not based upon substantial evidence and is based on legal error. (Doc. 12 at 18-29) Each argument will be addressed separately below.

### 1.     SSR 96-7p or SSR 16-3p

Ms. Novak raised the issue of whether SSR 16-3p or SSR 96-7p governs the Court's review of the ALJ's evaluation of Ms. Kovak's statements regarding the intensity, persistence, and limiting effect of her symptoms. (Doc. 12 at 18) SSR 16-3p superceded SSR 96-7p with an effective date of March 28, 2016. (*Id.*) The ALJ's decision regarding Ms. Kovak's claim was issued on January 9, 2015. (Doc. 8 at 15) Therefore, SSR 96-7p governed the ALJ's decision and the Court will

review the ALJ's decision under the guidance provided in SSR 96-7p.

### 2. Montana Public Employee's Retirement System Disability Determination

Ms. Novak was determined to be disabled under Montana's Public Employee's Retirement System ("PERS") rules and regulations. (Doc. 8 at 31-32) Ms. Novak argues that the ALJ, although he acknowledged this disability determination, erred in misapprehending the PERS's disability determination. (Doc. 12 at 19-21) The Commissioner argues that the ALJ properly considered the PERS's disability determination and committed no error. (Doc. 13 at 15)

Disability determinations by other government agencies are not binding on the Commissioner. *See* 20 C.F.R. § 404.1504; *Little v. Richardson*, 471 F.2d 715, 716 (9th Cir. 1972) (State determination of disability was not binding in proceedings on application for Social Security disability benefits). This rule applies even where the standards for obtaining disability benefits through another agency are more rigorous than the standards applied by the Social Security Administration. *See Wilson v. Heckler*, 761 F.2d 1383, 1386 (9th Cir. 1985). Therefore, while a state finding of disability can be introduced into evidence in a proceeding for Social Security disability benefits, an ALJ may attribute as much or as little weight to the finding as he or she deems appropriate.

Here, the ALJ considered the PERS's disability examiner's opinions that led

to his determination that Ms. Novak was disabled and determined that they were to be given "minimal weight." (Doc. 8 at 32)   The ALJ's reasons for according this weight were that PERS's disability examiner's opinions "are vague, and do not provide the type of specific functional limitations that are needed in asserting a claimant's RFC. (*Id.*)

Although Ms. Novak would have given the PERS's disability examiner's opinions greater weight than did the ALJ, this does not constitute error on the part of the ALJ.  The Court finds that the ALJ considered the PERS's disability determination, attributed the weight to it as he determined was appropriate, and gave his reasons for doing so that were supported by substantial evidence. Therefore, the ALJ did not error as Ms. Novak claims.

### 3.    Medical and Other Opinions

#### a.    Nurse Vogel

Ms. Novak argues that the ALJ erred in giving Nurse Jill Voegel's opinions expressed in her January 29, 2014 hospital discharge notes "significant weight" in assessing Ms. Novak's RFC because the notes only reflect Voegel's opinion about whether she can perform certain activities of daily living upon being discharged from the hospital formulated after a single visit with her and Voegel's opinions do not relate to her ability to function in a work environment. (Doc. 12 at 21-22) The

Commissioner argues Voegel's opinions are the type of evidence an ALJ may properly consider in assessing a claimant's RFC and that the ALJ considered Voegel's opinions along with the entire record. (Doc. 13 at 19-20)

Voegel's notes reflect that she was assessing Ms. Novak's ability to dress her upper and lower body, bath, use the toilet, transfer, and walk in connection with Ms. Novak being discharged from the hospital where she had been admitted for seven days for treatment of a lower leg contusion. (Doc. 8 at 942-948) Voegel's notes do not reflect, among other things, the time it took Ms. Novak to perform these activities or the effort required to perform these activities. The ALJ performs a RFC assessment to determine an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p. There no indication in Voegel's notes that she was attempting to assess whether Ms. Novak had the ability to engage in "sustained work-related. . . a regular and continuing basis" and it is obvious from the setting in which Voegel was making her assessment that Ms. Novak was not "in a work setting." Therefore, the Court determines that substantial evidence does not support the ALJ giving Voegel's one-time, limited assessment "significant weight" in assessing Ms. Novak's RFC and it was error to do so. The Court therefore remands Ms. Novak's claim to the ALJ to re-assess Ms. Novak's RFC without "significant weight" being

given to Voegel's January 29, 2014 assessment.

### b. Drs. Fernandez and Schofield

Dr. Fernandez performed an assessment of Ms. Novak's RFC on October 16, 2012, covering the period of time from August 1, 2011, to October 16, 2012, in his role as a non-treating State agency medical consultant and expressed several opinions related to his assessment. (Doc. 8 at 121-124) The ALJ assigned "limited weight" to Dr. Fernandez's opinions because (1) his opinion slightly underestimates the exertional limitations imposed by Ms. Novak's impairments as established in the record; (2) he assesses greater environmental impairments than appear to be warranted when considering Ms. Novak's treatment record; (3) he fails to fully account for some of Ms. Novak's impairments when addressing her postural limitation; (4) his opinion does not provide particularly clear explanations for the rational behind the opinion. (*Id.* at 32).

Dr. Schofield expressed several opinions in relation to Ms. Novak's application for PERS state disability benefits. (*Id.*) The ALJ gave Dr. Scholfield's opinions little weight because (1) they are not based on any personal interaction with Ms. Novak, but a simple review of the records; (2) the limitations provided are fairly vague, and do not provide much in the way of specific functional limitations that help develop a RFC for Ms. Novak. (*Id.*)

Ms. Novak argues that the ALJ erred in giving Dr. Fernandez's opinions limited weight because "it acknowledges very early-on impact Lori's medical conditions was (sic) having on her ability to perform past relevant work." (Doc. 12 at 23) In relation to Dr. Schofield, Ms. Novak argues that the ALJ erred because Dr. Schofield was "sensing not just an issue with carpal tunnel, but also issues with the fibromyalgia subsequently diagnosed." (*Id.*) The Commissioner argues that Ms. Novak failed to make any specific argument addressing the reasons the ALJ gave for giving Drs. Fernandez's and Schofield's opinions limited weight and that she waived any other arguments by not setting them forth in her opening brief. (Doc. 13 at 18)

Although Ms. Novak may give more weight to Drs. Fernandez's and Schofield's opinions than did the ALJ, that is not the test. Rather, the controlling issues are whether the ALJ's reasons for giving Dr. Fernandez's opinions little weight are supported by substantial evidence and whether these reasons are based on legal error. Ms. Novak does not argue that the reasons the ALJ gave for providing Drs. Fernandez's and Schofield's opinions limited weight are not supported by substantial evidenced or that they are based on legal error.

The ALJ set forth the reasons for giving Drs. Fernandez's and Schofield's opinions limited weight, and the Court determines that substantial evidence

supports these reasons. The Court also determines that the ALJ did not commit legal error in doing so.

### 4. Credibility

Ms. Novak argues that the ALJ's RFC assessment is erroneous because his credibility assessment of her testimony is not based upon substantial evidence. (Doc. 12 at 23) In support, Ms. Novak advances the following arguments: (1) the ALJ erred in not factoring in her fibromyalgia and narcolepsy; (2) the ALJ erred in determining that her pain and fatigue can be explained by impairments other than her fibromyalgia; (3) the ALJ erred in considering she does not have a prescription for an assistive device such as a cane; (4) the ALJ ignored her testimony that her conditions have worsened and that she has future possible surgeries to address her orthopedic issues; (5) the ALJ erred in misapprehending the nature of her mental conditions; and (6) the ALJ applied the new ruling (SSR 16-3p) in evaluating her symptoms. (*Id.* at 23-25)

In response, the Commissioner argues the ALJ's RFC assessment is not erroneous because (1) the ALJ properly excluded Ms. Novak's fibromyalgia and narcolepsy from his RFC assessment because the former was properly determined to not be a medically determinable impairment and the latter did not impose work related limitations; (2) Ms. Novak failed to detail specific limitations from her

fibromyalgia and the ALJ was not required to consider any in any event because her fibromyalgia was properly determined to be not medically determinable; (3) there was no medical documentation of Ms. Novak's need for an assistive device nor the circumstances for which it was needed; (4) Ms. Novak's testimony about her beliefs of whether her conditions have worsened and may require surgery are the ALJ's responsibility to determine in assessing her RFC; (5) the ALJ did not misapprehend Ms. Novak's alleged disability, but rather cited to Dr. Moore's note discussing Ms. Novak's difficulty in "extricating her depressive symptoms from her pain symptoms;" (6) the ALJ properly applied the old ruling (SSR 96-7p) in assessing Ms. Novak's credibility. (Doc. 13 at 11-22)

In relation to the ALJ committing error in relation to Ms. Novak's fibromyalgia, the Court determined above that the ALJ did not error in determining that it was not medically determinable and that the symptoms it caused could be caused by other factors. Likewise, in relation to Ms. Novak's narcolepsy, the Court determined above that the ALJ did not error in this respect.

Next, in relation to Ms. Novak using an assistive device (cane), the Court determines that the ALJ did not error because SSR 96-9 requires that "there must be medical documentation establishing the need for a hand-held assistive device to aid in walking. . ."

Next, the Court determines that Ms. Novak's testimony about whether she is getting worse and whether she will need further surgery is not binding on the ALJ because it is the ALJ's responsibility to determine a claimant's overall credibility and to assess the claimant's RFC. *Edlund v. Massinari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The fact that Ms. Novak has a different view of the evidence does not establish that the ALJ erred in assessing her RFC because where the evidence is susceptible to more than one interpretation, as it is here, the ALJ must be affirmed. *Thomas v. Barhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Next, the ALJ did not misapprehend the nature of Ms. Novak's mental conditions. Rather, the ALJ determined that Ms. Novak was not disabled as a result of her mental conditions and their impact on her other conditions and this is a reasonable interpretation of the evidence. *Id.*

Finally, as discussed above, the ALJ properly applied SSR 96-7p in assessing Ms. Novak's credibility as SSR 16-3p was not effective as of the date of the ALJ's decision.

## VII. CONCLUSION

The ALJ's determination is not supported by substantial evidence and is based on legal error.

Therefore, the undersigned issues the following:

**ORDER**

1.      Ms. Novak's Motion for Summary Judgment is GRANTED.

2.      The Commissioner's Motion for Summary Judgment DENIED.

3.      The Commissioner's decision denying benefits to Ms. Novak is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and her claim is REMANDED for additional administrative proceedings consistent with the order.

DATED this 10th day of April 2017.


John Johnston
United States Magistrate Judge